ERNEST GOSS *v*. EDWARD A. BURT.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ

Opinion filed November 25, 1910.

*Assault and Battery—Action—Evidence—Conspiracy—Proof of an Unlawful Purpose—Sufficiency.*

In an action for assault and battery, where the issue was on defendant's plea that he struck plaintiff in order to eject him from defendant's land, whither, it was alleged, plaintiff with others had come pursuant to a conspiracy to despoil plaintiff's garden, evidence that other members of the party that was with plaintiff on defendant's land at the time

of the assault were there on the previous day, and then despoiled
defendant's garden, was improperly admitted on the question of con-
spiracy and as affecting defendant's right to defend his property
against threatened invasion, in the absence of evidence that plaintiff
had knowledge of the conspiracy and knowingly acted in furtherance
thereof.

The introduction by defendant of evidence of the occurrence on the previous
day, upon the court's ruling that such evidence would be admissible
if knowledge of that occurrence could be brought home to plaintiff,
raised an implied promise to make the indicated connection.

The probability that one will communicate a matter to another merely
because the former knows it is too speculative and remote to have any
probative value.

TRESPASS for assault and battery.  Plea, the general issue
with notice.  Trial by jury at the December Term, 1909,
Addison County, *Taylor* J., presiding.  Verdict and judgment
for the defendant.  The plaintiff excepted.  The opinion fully
states the case.

*Leroy C. Russell* for the plaintiff.

Although, as held in *Patch Mfg. Co.* v. *Protection Lodge,* 77
Vt. 294, a party relying on a conspiracy may either prove the
conspiracy which renders the acts of the conspirators admis-
sible against each other, or prove the acts of different persons,
and so prove the conspiracy, still, if the evidentiary fact relied
on has no apparent connection with the case, counsel must
make an accompanying promise to make the required connection,
and subsequently fulfil that promise, or the admission of the
evidence will be error.  3 Wig. Ev. §1871; *Slate* v. *Meader,*
54 Vt. 126; *Railroad Co.* v. *Baxter,* 32 Vt. 805; 12 Cyc. 556;
*State* v. *McDonnell,* 32 Vt. 491; *Hall* v. *Jones,* 55 Vt. 297; *Arm-
strong* v. *Noble,* 55 Vt. 428.

There was no evidence of plaintiff's connection with the al-
leged conspiracy of the previous day, nor of his knowledge
thereof.  *People* v. *Stevens,* 8 Pac. 712; *U. S.* v. *Johnson,* 26
Fed. 682.

*Charles I. Button* for the defendant.

MUNSON J.  The assault complained of occurred on the

thirteenth day of July, 1909, at the river bank which bounds the rear of defendant's house lot, and was part of a general attack on a party of boys and girls who had just landed from a rowboat. The party consisted of Ernest Goss, the plaintiff, Henry Merritt and his brother Willie, Grace Comstock and Ruth Comstock, sisters, and Wanita Warner. The boat had been drawn partly upon the bank, the plaintiff had entered it again to bail out some water, and the rest of the party were standing or sitting nearby, when the defendant approached the party from the direction of his house and struck the girl Ruth with a stick as large at one end as a man's index finger; whereupon all the party except Henry Merritt and the plaintiff ran towards the adjoining lot. Shortly after striking the girl, the defendant attacked Henry Merritt with the stick and followed him into the boat, where he struck him a blow; upon which Henry jumped from the boat and waded to the bank. The defendant then struck the plaintiff with his stick, and finally pushed him backward from the boat into the water where it was two or three feet deep.

The plaintiff and Henry Merritt and Grace Comstock were sixteen years of age. The defendant testified that when about eight rods from the children he shouted to them "get off my place"; that none of the children complied with this command, but that all of them except the plaintiff, who was in the boat, stood in a fan-shaped position with Henry Merritt in the center, which he then regarded as a formation of defence, and that he thereupon struck the girl; that Henry Merritt did not at first attempt to leave the premises by land, but tried to get in the rear of the defendant and to the boat, and that on an inquiry from Henry, "what are you whipping me for?" he said to him repeatedly, "why don't you get out then"; that when he entered the boat the plaintiff had an oar in his hand, and made a movement with it which led him to believe that plaintiff was striking at him. The plaintiff's evidence tended to show that none of the children heard the defendant's direction to leave the premises; that no resistance or defence was attempted, and that the plaintiff had no intention of striking the defendant; that Henry was from the first trying to escape from the defendant and his blows, but that the defendant kept overtaking him.

whichever way he ran until he finally went into the boat as a way of escape; that after the defendant entered the boat Henry told him they would leave if he would push off the boat, and that the presence of the defendant in the boat made it impossible for the boys to push it off.

If the testimony had been confined to what occurred on that day, this would have been in substance the case presented.

The case was tried on the general issue, with a notice, among others, which set forth that on the day preceding the acts complained of certain youths and maidens entered the defendant's garden and ate and destroyed quantities of fruit and vegetables there growing; that after this a conspiracy was formed by certain of these persons to return on the morrow with others to repeat said acts, which plan was communicated to other youths and maidens and became known to the defendant; that in accordance with and for the purpose of carrying out this conspiracy the plaintiff and his companions landed on defendant's premises at the hour set for the second raid; and that the defendant drove them off to prevent further depredations on his garden, using no more force than was necessary.

Evidence was received under this notice which tended to show that on the afternoon of July twelfth, Grace Comstock, Ruth Comstock, Wanita Warner and a fourth girl came upon the rear of defendant's lot; that Clifton Piper and another boy soon came to the bank where the girls were, and that Willie Merritt rowed across the stream bringing two McMaster boys with him; that Willie made two trips down the river giving the others boat rides, and that the ones left on the bank the second time were Grace Comstock, Wanita Warner, Piper and the two McMaster boys; that while waiting for the return of the boat these boys entered defendant's garden two or three times, and broke off branches of currants, and pulled up vegetables of various kinds, and took them to the girls; that one or both of the girls encouraged the boys in doing this, and that both ate some of the currants,—that Wanita carried home some of the beets, and that the rest of the vegetables were left on the bank or thrown into the river; that on their way home that

afternoon Piper asked the girls, in the presence of Willie Merritt and other boys, to come down the next afternoon, saying that he would come too; that some of the girls said they would come, and that Piper asked them to bring some matches so that they could have a fire, and said that he would get fruit and vegetables from the defendant's garden.  It appeared from the defendant's evidence that before the affair of the thirteenth he was fully informed as to the occurrences of the twelfth, the persons who were there, and the plans made for the next day.

The matter covered by the notice was first broached by an inquiry made in the cross-examination of one of the plaintiff's witnesses.  The plaintiff objected to this, and further inquiries in that line, on the ground that they were not cross-examination, and that the evidence was immaterial and irrelevant because it had not appeared that the plaintiff was present on the twelfth, nor that he was in privity with the claimed conspirators.  The court ruled that independent of any conspiracy the evidence would be admissible as tending to characterize the plaintiff's entry upon the land, if knowledge of the previous occurrence was brought home to him.  Upon a further inquiry being made, it was objected that if defendant claimed there was some connection between what occurred on the twelfth and the matter in suit that made the evidence admissible, there should be some statement as to what was to be shown later; that if the evidence was offered to characterize the plaintiff's entry, it was not admissible for that purpose; and that if offered to show the conspiracy alleged, nothing had then appeared to make it admissible on that ground.  In replying to these claims defendant's counsel insisted that in any event the evidence was admissible on the question of malice and exemplary damages.  There was no disclaimer of an intention to ask such damages.  All the questions raised by the plaintiff as above stated were covered by exceptions.

It appeared that the boat used on the day of the assault was borrowed by the plaintiff and Henry Merritt, and that in rowing down stream they saw Willie Merritt and the three girls on the rear of defendant's lot and took them in for a boat ride, and that the landing made at the time of the assault was on their return from this ride.  It appeared that neither the

plaintiff nor Henry Merritt was on the defendant's lot July twelfth, nor in that vicinity; and both testified that when they landed there at the time of the assault they had no knowledge of what had been done there the day before, and had heard nothing of any plan to meet there that day or of any purpose to despoil the defendant's garden. According to the testimony of all six, neither the boys in the boat nor the persons on the bank knew that the others were to be there. Some of these testified that nothing was said when they were together that afternoon about depredations on the defendant's garden, and all of them said on cross-examination that they could not remember what was talked about. Unless found in the circumstances herein detailed and in the declared inability of the witnesses to recall anything that was said during the boat ride, there was no evidence connecting the plaintiff with the alleged conspiracy.

At the close of the testimony the plaintiff moved that the evidence introduced by the defendant as tending to establish a conspiracy of the plaintiff and other persons to enter the defendant's lands and despoil his garden on the day of the alleged assault, and otherwise inadmissible, be stricken from the record and withdrawn from the consideration of the jury; first, because the defendant had failed to connect the plaintiff therewith, or to show any privity between the plaintiff and the claimed conspirators; second, because the defendant had failed to prove facts which in law established the conspiracy claimed. This motion was overruled; and the case went to the jury on the question of conspiracy, and on the further special defences of lawful ejectment from the premises, defence of property, and self-defence. The court's charge restricted the use of the evidence relating to the occurrences of July twelfth solely to "the question of conspiracy, as affecting the right of the defendant to defend his property against a threatened invasion." No exceptions were taken respecting the charge.

Assuming that the evidence objected to was admissible on the question of exemplary damages, the course taken by the court regarding it was nevertheless error. The evidence was received as tending to characterize the plaintiff's entry upon the land, if knowledge of the previous occurrence was brought home to him. The question of conspiracy was included in the

grounds of defence on which the case was submitted, and .the jury was permitted to use the evidence on the question of conspiracy, as affecting the right of the defendant to defend his property against a threatened invasion. The evidence was received in the expectation that there would be some evidence tending to connect the plaintiff with the claimed conspiracy, and it was not evidence upon the issues submitted without such connection. If there was nothing in the evidence received that tended to charge the plaintiff with knowledge of an unlawful purpose on the part of the others, the exception taken to its admission on the grounds stated was sufficient to protect the plaintiff from the effect given to it. Defendant's suggestion that there was no promise here to make a further connection cannot avail him. The introduction of the evidence upon the court's conditional ruling carried with it an implied promise.

We think there was no evidence from which the jury could legitimately infer that the plaintiff was knowingly acting in furtherance of an unlawful purpose. It is said that the circumstances of the boat-ride and landing were evidence of the plaintiff's knowledge and co-operation, but no specific argument is drawn from those circumstances. If we refer to the discussion in the court below, it seems to have been suggested that inasmuch as Piper's proposal for the following day was made in the presence of Willie Merritt, and Willie Merritt was a brother of the Henry Merritt who was plaintiff's companion of the following day, the jury might properly assume that Piper's proposal had reached the ears of the plaintiff. But the probability that one will communicate a matter to another, arising from the simple fact that he knows it, is too speculative and remote to be recognized as legitimate evidence in a jury trial. *Camp* v. *Averill,* 54 Vt. 320. It is said that the plaintiff's case is based almost entirely on the negative testimony of his witnesses as to what transpired during the boat-ride. But the case upon the question of conspiracy was the defendant's case, and the burden of producing some affirmative evidence in support thereof was upon him. If the jury considered that the plaintiff's witnesses were discredited by their declared inability to remember what was talked about in the boat, and by their appearance when giving this testimony, this did not make affirmative evidence

for the defendant, any more than the impeachment of a witness is evidence to establish the opposite of his testimony.

*Judgment reversed and cause remanded*